UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN W. KELLEY,

    Plaintiff,

vs.

    Civil Action No. 09-CV-14318
    HON. MARK A. GOLDSMITH

STEEL TRANSPORT, INC., et al.,

    Defendants.
_____/

### OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION (D.E. 16) AND (2) DENYING DEFENDANT COOPER'S MOTION TO BIFURCATE (D.E. 40)

**I.    Introduction**

This matter is before the Court on (i) a motion for partial summary judgment by Defendants Steel Transport and Waite and (ii) a motion to bifurcate by Defendant William Cooper. For the reasons set forth below, the summary judgment motion will be granted in part and denied in part, and the motion to bifurcate will be denied.

**II.    Factual and Procedural Background**

Plaintiff Kevin Kelley's suit stems from the injuries he received in an accident between his motorcycle and a semi tractor-trailer owned by Defendant William L. Cooper, Sr., leased to Defendant Steel Transport, and operated by Defendant Gary Waite. According to the amended complaint, Plaintiff suffered multiple injuries, including a "serious impairment and serious disfigurement of his right lower extremity." Docket entry (D.E.) 10 at ¶ 12 (complaint). The complaint includes three counts. In Count I, it alleges that driver Gary Waite was negligent. In

particular, the complaint alleges that Defendant Waite violated Michigan statutes concerning operation of motor vehicles, U.S. Department of Transportation Motor Carrier Safety Regulations, Dearborn local ordinances, and common law.  In Counts II and III, the complaint alleges that Defendant Cooper and Defendant Steel Transport are liable for the negligent actions of Defendant Waite.[1]  The complaint also alleges that Plaintiff sustained damages including "wage loss, loss of wage earning capacity, medical expenses, pain and suffering, loss of enjoyment of life, serious disfigurement of his right leg[,] and other non-economic damages." D.E. 10 at ¶ 13.

Defendants Waite and Steel Transport filed a motion for partial summary judgment on September 10, 2010.[2]  Plaintiff filed a response on September 30, 2010, in which he agreed to summary judgment on several of the claims.  Defendants did not file a reply.

In addition, on February 10, 2011, Defendant Cooper filed a motion to bifurcate the liability and damages portions of the trial, in which co-Defendants Waite and Steel Transport concurred.  Plaintiff responded on February 23, 2011.  Defendants did not file a reply.

The Court held a hearing on both motions on March 24, 2011.

**III.    Discussion**

    **A.  Motion for Partial Summary Judgment**

The complaint alleges that Defendant Waite breached various duties associated with his driving a tractor-trailer. The complaint lists Waite's breaching actions as:

---

[1] Because Plaintiff apparently failed to serve Defendant Cooper before expiration of the summons, Plaintiff filed a new suit against Cooper, No. 10-13979, also assigned to this Court. On January 7, 2011, the Court granted Cooper's motion to consolidate the two cases. D.E. 36.

[2] At the March 24, 2011 hearing on the motion, defense counsel represented that Defendant Cooper joined in his co-Defendants' arguments; Plaintiff's counsel stated he had no objection to the Court construing the motion as having originally been filed on behalf of Defendant Cooper.

¶ 16a.  Operating his vehicle in a wanton and willful disregard for the safety of persons or property in violation of [Mich. Comp. Laws §] 257.626 and local ordinance.

¶ 16b.  Operating his vehicle in a careless or negligent manner likely to endanger any person or property in violation of [Mich. Comp. Laws §] 257.626b and local ordinance.

¶ 16c.  Failing to keep a proper lookout in violation of the common law.

¶ 16d.  Making a right turn across two lanes of travel without signaling and/or first determining whether the turn could be made safely in violation of [Mich. Comp. Laws §] 257.648 and local ordinance.

¶ 16e.  Operating his vehicle without his mirrors properly adjusted to see along the right side of his vehicle in violation of [Mich. Comp. Laws §] 257.708, local ordinance and federal regulation.

¶ 16g.  Committing other violations of the U.S. Department of Transportation Motor Carrier Safety Regulations, Michigan Vehicle Code ([Mich. Comp. Laws §] 257.1, et seq.), local ordinances for the City of Dearborn and/or the common law.

¶ 16h.  Otherwise failing to act in a reasonable manner under the circumstances then existing.

D.E. 10 at ¶ 16.

The complaint also alleges that Defendant Steel Transport breached various duties it owed to Plaintiff. The complaint lists Steel Transport's breaching actions as:

¶ 26a.  Entrusting its vehicle with a driver that it had reason to know would operate it in an unsafe manner due to a poor prior driving record, illness and/or fatigue in violation of federal regulations and common law.

¶ 26b.  Committing other violations of the U.S. Department of Transportation Motor Carrier Safety Regulations, Michigan Vehicle Code ([Mich. Comp. Laws §] 257.1, et seq.), local ordinances for the City of Dearborn and/or the common law.

¶ 26c.  Otherwise failing to act in a reasonable manner under the circumstances then existing.

D.E. 10 at ¶ 26. The complaint lists the exact same breaching actions for Defendant Cooper. See id. at ¶ 21.

In their motion for partial summary judgment, Defendants Waite and Steel Transport argue that they are entitled to summary judgment on the claims in paragraphs 16a, 16e, 16f, part of 16g, 26a, and part of paragraph 26b of the first amended complaint.  D.E. 16.  These claims alleged reckless driving under Mich. Comp. Laws § 257.626, driver fatigue, illness, and/or hours of service violations, violation of the Federal Motor Carrier Safety Regulations, and negligent entrustment.  In Plaintiff's response to the motion, he agreed to summary judgment on all of the claims except ¶ 16e (concerning operating a vehicle without proper mirror adjustment).  D.E. 20.  Accordingly, the only disputed issue in the current motion is whether Defendants Waite and Steel Transport are entitled to summary judgment on Plaintiff's assertion that Waite operated his vehicle without his mirrors properly adjusted to see along the right side of his vehicle in violation of Mich. Comp. Laws § 257.708, local ordinance, and federal regulation.

Plaintiff does not state which local ordinance or federal regulation he contends Defendants violated with regard to the issue of mirror adjustment.  The state statute referenced in the complaint states, in pertinent part, that:

> [e]very commercial vehicle of 1/2 ton capacity or more, operating upon the public highways of this state, shall be equipped with 2 mirrors, 1 on each side, adjusted so that the operator shall have a clear view of the highway behind the commercial vehicle.

Mich. Comp. Laws § 257.708.  Plaintiff does not dispute that the truck had two mirrors; the issue is whether they were adjusted so that Waite had a clear view of the highway behind the vehicle.

Defendants contend that they are entitled to summary judgment on this point because of the absence of evidence that the mirrors were not properly adjusted.  D.E. 16 at 5-6.  They argue that Defendant Waite's inability to see Plaintiff prior to impact is not evidence that Defendant Waite's mirrors were positioned incorrectly, rather it is more likely that Plaintiff was in Defendant Waite's blind spot (which would exist even with properly adjusted mirrors).  Id.  They

4

further argue that Plaintiff's own accident reconstruction expert had no opinion on whether the mirrors were positioned incorrectly under Michigan law. Id. at 6.

Plaintiff argues that the mirror positioning is a question for the jury. He points out that the calculations of Defendants' expert show that 30 to 44 seconds elapsed from the moment the truck began moving at the traffic light to the point of impact with the motorcycle, giving the driver "plenty of opportunity to see plaintiff if he was looking in his mirror or had them correctly adjusted." D.E. 20 at 2. Plaintiff also points out that the defense expert (i) made the assumption that the mirrors were in the same position when he inspected the truck months after the accident as they had been the day of the accident, and (ii) had not determined the specific "angles of view" in the mirror prior to the accident. Id.

After examining the evidence cited by the parties, along with their arguments, the Court concludes that there is a fact issue as to whether the mirrors were properly adjusted at the time of the accident. It is undisputed that the driver did not see Plaintiff before the point of impact. That may have been the result of the mirrors not being properly adjusted, a result of the driver being careless in looking out for other vehicles, or a result of some other factor. Neither party's expert offered an opinion on whether the vehicle's mirrors were adjusted in accordance with Michigan law at the time of the accident. But the jury may conclude that the accident resulted from a faulty mirror adjustment, rather than the driver's failure to look into his mirrors, or that it resulted from another factor. It is for the fact finder to weigh the evidence presented and make a determination. Accordingly, this issue presents a jury question.

### B.  Motion to Bifurcate

Defendant Cooper moves to bifurcate the trial to separate the liability issue from the damages issue. Cooper argues that bifurcation is necessary so that the jury can decide the

question of comparative negligence without being influenced by the sympathy that would necessarily be aroused by testimony about Plaintiff's serious physical injuries. D.E. 40 at 7-9. Cooper contends that bifurcation is in the interest of judicial economy because if the jury finds Plaintiff more than 50% at fault, the trial will be shortened, given that testimony relating to non-economic damages would be unnecessary.[3] Id. at 10. Cooper further argues that Plaintiff will not be prejudiced by bifurcation, because if the jury finds that Plaintiff was less than 50% at fault, the jury will get to consider Plaintiff's non-economic damage evidence. Id. at 9. Cooper also asserts that (i) the issues of liability and damages are significantly different, meaning that they are easily separable for purposes of presentation to a jury, (ii) the evidence related to liability is substantially separate from the evidence related to damages, and (iii) bifurcation would have a neutral effect on the trial, while not bifurcating would give Plaintiff an unfair advantage. Id. at 11-12.

Plaintiff responds that bifurcation is more often used in complex class action litigation, rather than typical negligence suits. D.E. 42 at 2-3. With regard to judicial economy, Plaintiff argues that (i) the medical depositions will have to take place prior to trial regardless of the jury's eventual determination on liability (and thus there would not be any additional time savings in that respect in the event of bifurcation) and (ii) bifurcating would cause the jury to spend more time deciding the case if they do reach the issue of damages. Id. at 4. Finally, Plaintiff argues that the Court should reject the argument that a jury would be unfairly overcome by sympathy for his injuries. Plaintiff points out that Defendants can explore the issue of

---

[3] This is because Michigan law applies in this case and under Michigan law, non-economic damages are not available to "a party who is more than 50% at fault." Mich. Comp. Laws 500.3135(2)(b).

separating feelings of sympathy from a determination on liability with individual jurors during voir dire, and argues that the Court can formulate specific jury instructions to address the issue. Id.  Plaintiff contends that Defendant Cooper's logic would mean that all tort cases (presumably involving an injured plaintiff) would require bifurcation of the liability and damages issues.  Id.

Pursuant to Federal Rule of Civil Procedure 42(b), "[a] court may bifurcate a trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Wilson v. Morgan, 477 F.3d 326, 339 (6th Cir. 2007) (internal quotation marks omitted).  Whether to bifurcate a trial under Rule 42(b) is "within the sound discretion of the court."  Yung v. Raymark Indus. Inc., 789 F.2d 397, 400 (6th Cir. 1986).  "The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials."  K.W. Muth Co., Inc. v. Bing-Lear Mfg. Group, L.L.C., No. 01-cv-71925, 2002 WL 1879943, at *3 (E.D. Mich. Jul 16, 2002) (quoting Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, 256 (D.N.J. 1997)).[4]  Importantly, as the Advisory Committee notes following the Rule state, "separation of issues for trial is not to be routinely ordered."  Fed. R. Civ. P. 42, Notes, 1966

---

[4] At least one other judge of this court has suggested that the following factors be considered:

> (1) convenience; (2) prejudice; (3) expedition; (4) economy; (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

K.W. Muth Co, 2002 WL 1879943, at *3 (quoting THK America, Inc. v. NSK Co., Ltd., 151 F.R.D. 625, 632 (N.D. Ill.1993)).

7

amt. Accordingly, "a number of courts" have indicated that bifurcation "should be used sparingly." 9A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2390 (3d ed. 2008).

Bearing this standard in mind and considering the parties' arguments, the Court denies the motion for bifurcation. Defendant Cooper has not met the requisite burden. The Court recognizes the possibility that the jury will feel sympathetic toward Plaintiff's serious physical injuries and the accompanying risk that the jury might allow that sympathy to color its determination on the issue of liability. However, courts regularly instruct juries to avoid considering improper factors when arriving at their decisions. See United States v. Ham, 628 F.3d 801, 811 (6th Cir. 2011); see also R.E. Linder Steel Erection Co., Inc. v. Wedemeyer, Cernik, Corrubia, Inc., 585 F. Supp. 1530, 1534 (D. Md.1984) (noting, in rejecting motion to bifurcate liability and damages, that "[a]ny prejudice which defendants may encounter . . . can be cured with instructions to the jury"). Further, courts presume that jurors do as they are instructed. See Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985); United States v. Certain Land Situated in the City of Detroit, 633 F.3d 418, 423 (6th Cir. 2011) ("We assume that juries listen to and follow instructions, and can properly refuse to consider certain evidence.").

In addition, the Court is not convinced that bifurcation would promote judicial economy. Although the trial, if bifurcated, could potentially be shortened by excluding some testimony concerning non-economic damages, the savings might amount to only a day of testimony. Such savings would evaporate should the damages phase become necessary. Furthermore, bifurcation requires a certain degree of duplication of efforts by the parties, counsel, and the Court. See Hugh v. Executone, Inc., No. 85-cv-71801DT, 1986 WL 32656 at *1 (E.D. Mich. Dec. 17,

1986). In a bifurcated trial, there would have to be another round of opening statements, closing arguments, and jury instructions.

For all of these reasons, the Court is not convinced that bifurcation is proper in the instant case.

## IV. Conclusion

For the reasons set out above, the Court orders as follows:

(1) With regard to Defendants' summary judgment motion (D.E. 16),

    (a) The motion is granted with regard to the claims in ¶ 16a, ¶ 16f, ¶ 21a, and ¶ 26a, of the first amended complaint.

    (b) The motion is granted with regard to the claims in ¶ 16g, ¶ 21b, and ¶ 26b of the first amended complaint, except for the content not challenged by the motion.[5]

    (c) The motion is denied with regard to ¶ 16e of the first amended complaint.

(2) Defendant Cooper's motion to bifurcate (D.E. 40) is denied.

---

[5] The portions of the claims in ¶ 16g, ¶ 21b, and ¶ 26b of the first amended complaint that were not challenged by the summary judgment motion and thus remain are:

- part of ¶ 16g: "Committing other violations of the . . . Michigan Vehicle Code ([Mich. Comp. Laws] 257.1, et seq.), local ordinances for the City of Dearborn and/or the common law."

- part of ¶ 21b: "Committing other violations of the . . . Michigan Vehicle Code ([Mich. Comp. Laws] 257.1, et seq.), local ordinances for the City of Dearborn and/or the common law."

- part of ¶ 26b: "Committing other violations of the . . . Michigan Vehicle Code ([Mich. Comp. Laws] 257.1, et seq.), local ordinances for the City of Dearborn and/or the common law."

SO ORDERED.

                                        s/Mark A. Goldsmith
                                        MARK A. GOLDSMITH
                                        United States District Judge

Dated: May 4, 2011
       Flint, Michigan

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2011.

                                        s/Deborah J. Goltz
                                        DEBORAH J. GOLTZ
                                        Case Manager